UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES<br>2100 L STREET NW<br>WASHINGTON, D.C. 20037<br><br>                              PLAINTIFFS<br>          v.<br><br>AGRICULTURAL MARKETING SERVICE<br>UNITED STATES DEPARTMENT OF AGRICULTURE<br>1400 INDEPENDENCE AVE. SW<br>WASHINGTON, D.C. 20250<br><br>                              DEFENDANT | CIVIL ACTION NO. 1:13-CV-1534 |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*., as amended, seeking disclosure of agency records requested from the Agricultural Marketing Service ("AMS" or "Defendant") relating to checkoff expenditures by the National Pork Board, an instrumentality of the U.S. government. Specifically, the Humane Society of the United States ("HSUS") requested records related to the Pork Board's purchase of "Pork, The Other White Meat" ("PTOWM"). It has been nearly 19 months since HSUS made its request and AMS has still not identified or disclosed significant responsive records. HSUS asks this Court to order AMS to complete its search and immediately disclose all responsive records.

## JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 552(a)(4)(B) (FOIA).

## VENUE

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(e). Defendant resides in this district, and a substantial part of the events or omissions giving rise to this action occurred or will occur in this district.

## THE PARTIES

4. Plaintiff The Humane Society of the United States ("HSUS") is a nonprofit animal protection organization headquartered in the District of Columbia and incorporated in Delaware. HSUS brings this action on its own behalf and on behalf of its members. HSUS is the largest animal protection organization in the United States, representing millions of members and constituents. HSUS actively advocates against practices that injure, harass, or abuse animals, and provides its members and the public with information regarding inhumane treatment on a variety of topics, including the application of state and federal laws that protect farm animals.

5. HSUS also closely monitors AMS programs and expenditures, many of which directly bear on issues relating to farm animal welfare. HSUS provides its members and the public with information on a wide spectrum of such programs and issues, including those related to the pork checkoff program, which is implemented and supervised by the Department of Agriculture. It is essential that HSUS is able to access public records available through FOIA requests to government agencies.

6. Defendant AMS is an agency of the Department of Agriculture, an Executive Department of the United States government. AMS is the agency responsible for implementation of the checkoff programs. AMS supervises all activities of the National Pork Board, an instrumentality of government established by federal regulation, 7 C.F.R. § 1230.50.

## STATUTORY AND REGULATORY FRAMEWORK

### Freedom of Information Act

7. FOIA requires agencies of the government, upon request, to "promptly" make records available to the public. 5 U.S.C. § 552(a)(3)(A); 5 U.S.C. § 552(a)(6)(C)(i).

8. Upon receiving a FOIA request, an agency has twenty (20) working days to respond to the request. 5 U.S.C. § 552(a)(6)(A)(i). A requestor may file an administrative appeal of an agency's failure to disclose requested records. *Id.* at § 552(a)(6)(A)(ii). An agency must make a determination on any such appeal within twenty (20) working days. *Id.* However, a requestor is deemed to have exhausted its administrative remedies, and may seek immediate judicial review of the matter, if the agency fails to comply with either of these time limits. *Id.* at § 552(a)(6)(C).

9. If the agency can show "exceptional circumstances" exist and that it is exercising due diligence, a Court may retain jurisdiction and grant the agency more time to complete the request for records. 5 U.S.C. § 552(a)(6)(C).

**FACTS GIVING RISE TO CLAIMS FOR RELIEF**

A. **The Subject of the FOIA Request**

10. The National Pork Board is an instrumentality of the U.S. government that was established by USDA regulations in order to administer the pork checkoff program. That program collects a mandatory assessment from producers and importers of pigs and requires the use of those checkoff funds for generic promotion, research, and consumer information activities, including those related to industry animal welfare practices. Funds collected through the program are prohibited from being used for lobbying or to influence government policy.

11. In 1986, the Pork Board adopted and began promoting PTOWM as a new brand identity. For 20 years, the Pork Board—with AMS approval—used checkoff funds to promote PTOWM, totaling more than 500 million producer dollars.

12. In 2006, the Pork Board suddenly announced that it would be paying the National Pork Producers Council—an industry trade association actively involved in lobbying—$60 million to purchase the PTOWM trademark, which the Pork Board had already been using and promoting for 20 years. To discover the true facts underlying this transaction, HSUS submitted the records request at issue in the instant action.

B. **The HSUS Request for Records**

13. On March 12, 2012, HSUS submitted a FOIA request to AMS, 2012-AMS-10947-F, seeking disclosure of any and all records from January 1, 2001 to December 31, 2006, relating or referring to:

>   1. The purchase by the National Pork Board of "Pork: The Other White Meat" slogan from the National Pork Producers Council, including any pre-purchase proposals, correspondence or other documents related to the potential or actual purchase.

4

2. Any appraisal of "Pork: The Other White Meat" slogan that was conducted in advance of the purchase.

3. Agency review, analysis and/or decisions about the purchase of "Pork: The Other White Meat."

4. Payment terms, including any analyses, contracts, or other similar documents, for the purchase of "Pork: The Other White Meat."

14. On August 30, 2012, AMS issued a "final response" stating that it had located a total of 74 pages responsive to the request, all of which were being released in their entirety. The response did not include separate agency determinations or disclosures for each of the four listed requests, but only the general one-line response listed above. A review of the materials provided revealed records partially responsive to items 1 and 4, but *none* responsive to items 2 and 3 for appraisals and agency correspondence relating to the expenditure.

15. On September 20, 2012, HSUS sent an email to AMS FOIA officer, Joseph Tangredi, to confirm that there were no responsive documents for both requests number 2 (appraisals of "Pork, The Other White Meat") and 3 (agency review, analysis, etc. of the same).

16. Mr. Tangredi responded the following day that the disclosed records were "the only ones that were received as responsive to this request" but that he contacted the agency Livestock division to research our questions regarding request numbers 2 and 3.

17. HSUS received no further communication from AMS in response to its inquiry, and so filed an administrative appeal on October 15, 2012, FOIA Appeal 2013-AMS-00006-A. The appeal challenged the agency's failure to make a specific determination to the HSUS requests and the failure to make an adequate search. HSUS expressly included references to certain responsive agency records that it independently discovered the existence of and which should have been identified and disclosed in response to the initial request.

## C. The Administrative Appeal

18. Twelve minutes after HSUS filed its appeal, AMS sent an email indicating that it had located some new records in response to the HSUS FOIA request. The records consisted of 13 pages of Pork Board meeting minutes. The AMS email further stated that the agency did not possess any records relating to Item 2, which sought any appraisals of PTOWM that were done in advance of the purchase.

19. The AMS email concluded that it hoped the new information was satisfactory and "that it obviates the need for this administrative appeal." HSUS replied to AMS that the appeal was "still necessary in this matter to address concerns about the scope and sufficiency of the search," which failed to produce specific records known to be in AMS' possession or any of the agency decision and analysis memos that would be mandated by USDA procedural policy for a transaction like this $60,000,000 purchase agreement.

20. On December 18, 2012, AMS notified HSUS that it was providing an "interim response" and disclosed 29 new pages of records "partially responsive to items 1, 2, 3 and 4" of the HSUS request. This disclosure included the documents specifically identified by HSUS in its appeal, including a decision memorandum from AMS but omitted nearly all the factual records on which the decision memorandum purported to be based. AMS also stated in the notice that the FOIA appeal was continuing and that it would inform HSUS of its right to judicial review of the matter when the appeal was completed.

21. On April 17, 2013, AMS notified HSUS by email that it had located 34 pages of new records. These records were financial valuations—the agency previously declared that it possessed no such records—and AMS would be notifying the submitters to provide an opportunity for comment before releasing them in accordance with Executive Order 12600.

6

22. On May 6, 2013, AMS indicated that nine pages of the financial records were being sent to two more submitters for review and comment.

23. In response to an inquiry from HSUS about the status of the 12600 records, AMS on May 21, 2013, indicated that it received a response from one submitter, but not the others. AMS indicated that it would review the response and notify HSUS when a determination was made.

24. As of the date of this filing, no further communications have been received from AMS regarding this FOIA request or appeal and no further records have been produced, including the financial valuations AMS identified nearly six months ago.

## CLAIMS FOR RELIEF

### COUNT I: Violation Relating to the Failure to Conduct an Adequate Search

25. Plaintiff hereby incorporates by reference all the preceding paragraphs as if fully set forth herein.

26. AMS is required to conduct a search that is reasonably calculated to discover all relevant documents. Yet on three separate instances, AMS has turned up new responsive records that should have been disclosed pursuant to the initial March 2012 FOIA request.

27. The financial valuations that AMS is still reviewing are particularly concerning, not only because AMS claimed on October 15, 2012, that it possessed no such records, but also because HSUS has discovered a statement from the Pork Board CEO that he never took possession of those appraisals in order to ensure that they would not be publicly disclosed through FOIA. Actually, AMS should have disclosed the March 7, 2006, email containing that statement from the CEO that was sent to the Board's vice president and consulting

economist, but it was never identified either. HSUS discovered it through independent research.

28. To date, the agency has failed to identify numerous critical records. Some of these records would have been produced as part of AMS' standard procedures for reviewing and making a decision on a transaction of this type, e.g., a due diligence report that would demonstrate a factual basis for the agency's decision memo, valuations of the trademark from qualified experts, agency correspondence regarding the proposed sale, etc.

29. Some of the relevant records that should have been produced, however, HSUS learned of only through its own research. In addition to the records specifically mentioned in the administrative appeal and the Pork Board CEO's email identified in paragraph 27 above, HSUS has also learned of the following undisclosed records:

1. A 2003 email from the Pork Board CEO commenting that increasing the Pork Board's annual licensing payments of pork producers' checkoff funds to NPPC from a single dollar per year to more than $800,000 per year would "allow the NPPC to get the money they need for the next four years";

2. A financial report from the Pork Board's own consulting economist that discusses the percentage of PTOWM's value *already paid for* by Pork Board expenditures;

3. A 2003 email from NPPC's president to the Pork Board's president indicating that in assessing the value of the PTOWM trademark while calculating the amount of a licensing fee, he gave the Pork Board "no credit" for any of the Pork Board's prior contribution of hundreds of millions of pork producers' checkoff dollars and listed his purported reasons for that;

4. Valuation reports prepared for the Pork Board from 2001 and 2003 that conclude there would never be any other buyers for the trademark and that

set its value at *tens of millions of dollars lower* than the Pork Board ultimately agreed to give to NPPC for it.

30. As described above, Defendant AMS's failure to make reasonable efforts to search for these and other responsive documents violates FOIA, 5 U.S.C. § 552(a)(3)(C).

31. HSUS has exhausted all required administrative remedies with respect to the HSUS FOIA request.

32. HSUS is entitled to injunctive relief compelling a lawfully adequate search for and production of responsive records.

### COUNT II: Violation Relating to the Failure to Produce Records

33. Plaintiffs hereby incorporate by reference all the preceding paragraphs as if fully set forth herein.

34. It has been nearly 19 months since HSUS submitted its FOIA request and is still awaiting production of significant records.

35. AMS is well beyond the time limits for making final determinations on FOIA requests and appeals. 5 U.S.C. § 552(a)(6)(A).

36. The agency has not even produced the financial records it notified HSUS that it had located almost six months ago.

37. AMS' actions in response to the HSUS request have been repeatedly untimely and inaccurate. There is no reasonable basis for the agency's failure to promptly and fully produce all records responsive to the HSUS request.

38. HSUS has exhausted all required administrative remedies with respect to the HSUS FOIA request.

39. HSUS is entitled to injunctive relief compelling a lawfully adequate search for and production of responsive records.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court issue an Order:

A. Requiring Defendant to conduct a lawfully adequate search for all responsive records;

B. Requiring Defendant to promptly disclose all responsive agency records;

C. Awarding Plaintiffs costs and reasonable attorneys' fees; and

D. Awarding Plaintiffs any other relief that is just and proper.

Respectfully submitted on October 3, 2013.

/s/ Matthew E. Penzer
_____
Matthew E. Penzer, Bar ID CO0016
Peter A. Brandt, Bar ID 982936

THE HUMANE SOCIETY OF THE UNITED STATES
2100 L. St., N.W.
Washington, DC  20037
(240) 271-6144
(202) 676-2357 Facsimile

Counsel for Plaintiffs